# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| LONNIE BOROM, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-07-3833 |
| | § | |
| UNITED SCAFFOLDING, INC., | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is defendant United Scaffolding, Inc.'s motion for summary judgment. Dkt. 18. Upon consideration of the motion, the response, the reply, and applicable law, the defendant's motion for summary judgment is GRANTED.

### I. BACKGROUND

Plaintiff, Lonnie Borom filed suit against defendant United Scaffolding, Inc., alleging race discrimination in violation of the Civil Rights Act of 1991, 42 U.S.C. §§ 1981, and 1981(a) arising from the July 24, 2007 termination of Borom's employment with United Scaffolding. Borom claims he was fired because of his race—African-American, and also that he was subject to different terms, conditions, and privileges of employment because of his race. Dkt. 1. United Scaffolding maintains that Borom and two other employees—both Hispanic—were discharged as a result of their participation in a workplace altercation, including profanity and threats of physical violence. Dkt. 18.

United Scaffolding hired Borom in early June 2007 as a leadman scaffold builder. Before he was fired, Borom worked on an assignment at the Electronic Material facility in Pasadena, Texas. Dkt. 18. Because United Scaffolding employees were not allowed to enter the plant unescorted,

upon arriving each day they were driven to their designated work area inside the plant. Dkt. 24, Ex. 2 at 26–27. On July 24, 2007, at approximately noon, Borom and other employees noticed racist graffiti on the wall inside United Scaffolding's portable lunch trailer. The message depicted a swastika, the letters "KKK," and the phrase "f--k niggers." Dkts. 18, 24.

Borom was offended and asked who was responsible for the vandalism, but he received no response. A few minutes later, a Hispanic coworker made a comment about showing Borom and other employees how to build scaffolds because they were lazy. In response, a Hispanic female coworker stood up and complained that tensions were getting out of hand. Borom then responded to the "lazy" comment, and the female employee rebuked him using a racial epithet. A verbal altercation between employees immediately ensued. Dkt. 24, Ex. 2 at 31–34.

A foreman soon entered the trailer, and the employees ceased arguing. Borom then complained to the foreman about the graffiti, and was told to return to work. After a few minutes, a second foreman entered the trailer. Borom again proclaimed his displeasure, and was again instructed to return to work.

A few hours later, Borom and other employees congregated at the trailer for their 3:00 p.m. break and noticed that the graffiti was still on the wall. During the break, the Hispanic female involved in the earlier confrontation referred to Borom as "banana hands," which Borom interpreted as a racial slur. Before returning to work, Borom, the woman, and another Hispanic employee engaged in another verbal altercation, where profanity and threats of violence were exchanged. Dkt. 19, Ex. A.

The second foreman discussed the afternoon incident with other employees, and arranged a 5:00 p.m. meeting. The foreman explained that he would not tolerate fighting, and terminated Borom and the two Hispanic employees involved in the altercation. Dkt. 19, Ex. A. As Borom

exited the trailer, he noticed the first foreman painting over the graffiti. Dkt. 24 at 4.

Borom asserts that he was fired because of his race and his objection to the graffiti. Further, Borom claims that he was subjected to a hostile work environment, i.e., the severity of the racist messages and failure of management to take prompt action to remove the graffiti and investigate those responsible. Dkt. 24. United Scaffolding maintains that Borom and the other employees were legitimately terminated because of their misconduct.

In his deposition, Borom alleges that the female employee involved in the altercation had also called him "banana hands" a few weeks prior to this incident. Aside from this isolated statement, which Borom ignored and did not report to his superiors, no other alleged racial slurs were directed towards Borom. *See* Dkt. 24, Ex. 2 at 42–43 (when asked about his response to the statement, Borom replied that he "ignored it."). Further, Borom admits that he has no idea who was responsible for the graffiti, and does not believe a Hispanic would write such messages. Borom presumes that a white male coworker, with whom Borom had no prior problems, was responsible. Dkt. 24, Ex. 2 at 40–42.

Borom also notes that a few weeks after this incident, two former coworkers informed him that they noticed tools belonging to the discharged female employee at the jobsite. However, these coworkers never admitted seeing the woman at work. Dkt. 24, Ex. 2 at 47–48.

United Scaffolding moves for summary judgment, asserting that Borom's firing was not motivated by discrimination. The defendant also maintains that Borom cannot establish a *prima facie* case of discrimination, and in the alternative, that Borom's employment was terminated for a legitimate, nondiscriminatory reason. Lastly, United Scaffolding claims Borom cannot show that the reason for his dismissal was pretextual. In support of its position, the defendant attaches an affidavit from one of Borom's foremen, stating that he discharged every employee involved in the

altercation. Further, the foreman asserts that after he was aware of the vandalism, he immediately instructed an employee to paint over the graffiti. Dkt. 19, Ex. A.

## II. ANALYSIS

### A. Summary Judgment Standard

A timely motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). On a defendant's motion for summary judgment, the plaintiff "must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." FED. R. CIV. P. 56(e). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to summary judgment, and no defense to the motion is required. *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting FED. R. CIV. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the nonmovant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

"Although summary judgment is not favored in claims of employment discrimination, it is nonetheless proper when there is no genuine issue as to any material fact and . . . the moving party

is entitled to judgment as a matter of law." *Waggoner v. Garland*, 987 F.2d 1160, 1164 (5th Cir. 1993).

**B.     Race Discrimination Standard**

The summary judgment test for discrimination claims under § 1981 is identical to the test for discrimination claims under Title VII. *Patel v. Midland Mem. Hosp. & Med. Ctr.*, 298 F.3d 333, 342 (5th Cir. 2002). A plaintiff may prove employment discrimination through direct or circumstantial evidence, or both. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002); *see Sreeram v. Louisiana State Univ. Med. Center-Shreveport*, 188 F.3d 314, 318 (5th Cir. 1999). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad,* 309 F.3d at 897 (citing *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995)). Borom alleges that he was fired because of harassment, which culminated in a workplace altercation. Because a presumption is necessary to find that Borom was dismissed because of his race, rather than for fighting, the court will consider Borom's allegations as circumstantial evidence. Accordingly, Borom's firing must be evaluated using the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 S. Ct. 1817 (1973).

In order to survive summary judgment under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of discrimination. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001). Specifically, a plaintiff must show that he (1) is a member of a protected group; (2) was qualified for the position; (3) was discharged or suffered some other adverse employment action; and (4) was treated less favorably than similarly situated employees of a different race." *Id*. at 512–13 (citing *McDonnell Douglas Corp.,* 411 U.S. at 793).

If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for the employment action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07, 113 S. Ct. 2742 (1993); *Bauer v. Abermarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999). The defendant's burden is one of production, not persuasion. *Okoye*, 245 F.3d at 512; *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003). If the defendant produces a legitimate, nondiscriminatory reason, the burden then shifts back to the plaintiff to offer evidence that the defendant's proffered reason is a pretext for race discrimination. *Patel*, 298 F.3d at 342.

**1.    As Applied**

### *a.*    *Plaintiff's* **Prima Facie** *Case*

United Scaffolding concedes that Borom is a member of a protected class and was qualified for the position from which he was terminated. The court need not determine whether Borom has established a *prima facie* case of employment discrimination, because even assuming that he has made a *prima facie* case, his claim fails. Therefore, assuming without deciding that he has made his *prima facie* case, the burden shifts to United Scaffolding to show a legitimate, nondiscriminatory reason for terminating Borom's employment. *McDonnell Douglas Corp.*, 411 U.S. at 802.

### *b.*    *Defendant's Legitimate, Nondiscriminatory Reason*

United Scaffolding asserts that Borom was fired because he was involved in an altercation, including threats of violence, on a customer's property. In support of its position, United Scaffolding produces an affidavit from Borom's foreman confirming this allegation. Based on this information and the foreman's investigation, Borom and the other two employees (both of whom were Hispanic) involved in the confrontation were terminated later that day.

The court finds that United Scaffolding has met its burden of producing a legitimate, nondiscriminatory reason for terminating Borom's employment by demonstrating Borom's involvement in a workplace altercation. Accordingly, the burden now shifts back to Borom to show a genuine issue as to whether United Scaffolding's articulated reason is pretexutal.

### *c.     Pretext*

In order to demonstrate that an employer's reason for termination is pretextual, a plaintiff must show that his employer intentionally discriminated against him based on race. *St. Mary's Honor Ctr.,* 509 U.S. at 511. The plaintiff must show that the employer's proffered reason is false and that discrimination was the real motivation for his termination. *Id.* at 515.

Here, Borom claims that he was discharged because of his objection to the racial graffiti and subsequent harassment from coworkers. Dkt. 24 at 8. However, Borom's claim is conclusory and does not suggest that his termination was based on anything other than the altercation. United Scaffolding decided to terminate everyone involved in the aggressive disturbance, and did so without regard to race or gender. In the absence of any evidence in the record to the contrary, the court finds that the reason for Borom's discharge was his participation in the potentially violent altercation, and not his race. Accordingly, his § 1981 claim that he was fired because of his race fails.

### C.     Hostile Work Environment Standard

Hostile work environment claims under § 1981 are analyzed as they would be under Title VII. *See Jones v. R. R. Donnelley & Sons Co.*, 541 U.S. 369, 383, 124 S. Ct. 1836 (2004). A plaintiff asserting a hostile work environment claim must show that (1) he or she belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment affected a term, condition or privilege of

8

employment; and (5) the employer knew or should have known of the harassment in question and failed to take action. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001). If a supervisor commits the harassment, the plaintiff must only satisfy the first four elements of this claim. *Celestine*, 266 F.3d at 353.

"Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *AMTRAK v. Morgan,* 536 U.S. 101, 115, 122 S. Ct. 2061 (2002). "In determining whether an actionable hostile work environment claim exists, [the court looks] to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* at 116 (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 22, 114 S. Ct. 367 (1993)).

### 1. As Applied

In his response to United Scaffolding's motion for summary judgment, Borom asserts that he has demonstrated a genuine issue of material fact as to a hostile work environment claim. Borom is African-American, and is within a protected class for purposes of race discrimination. He was also subject to unwelcome verbal harassment by coworkers, which was based on his race. Thus, Borom has satisfied the first three elements of a hostile work environment claim. Therefore, the court focuses on the fourth and fifth elements.

#### *a. Harassment Affected a Term, Privilege, or Condition of Employment*

For racial discrimination to be actionable, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris,* 510 U.S. at 21. Also, the harassment must be objectively offensive, meaning that a reasonable person

9

would find it hostile, and subjectively offensive, meaning that the victim perceived it as such. *Harvill v. Westward Commc'ns., L.L.C.,* 433 F.3d 428, 434 (5th Cir. 2005).

"Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275 (1998). Further, "'mere utterance of an . . . epithet which engenders offensive feelings in a employee,' does not sufficiently affect the conditions of employment to implicate Title VII." *AMTRAK*, 536 U.S. at 115 (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399 (1986)).

Though such graffiti had never appeared before, Borom clearly took offense to the hateful and offensive vandalism. Further, because such acts are usually motivated by severe racial animus, persons of all cultures are likely to perceive the writing as hostile. Given the malicious connotation of the graffiti, the court finds that the painted message was inflammatory to Borom and other employees, and likely affected the conditions of Borom's working environment.

Borom also objects to his coworkers' behavior after noticing the vandalism He asserts that the workplace altercation, as well as statements preceding it, were prompted by the graffiti. However, this conduct was not pervasive, as Borom does not show that such hostility was frequent or widespread. Further, the severity of the situation is diminished because Borom was a wilful participant in the verbal exchanges, as demonstrated by his responses to coworkers' insults. While the initial taunts may have been disrespectful, Borom's response likely escalated the tension among employees. As such, Borom cannot assert that the verbal sparring, or his involvement in the afternoon altercation, affected a condition of his employment.

Also, Borom claims that a few weeks before the altercation, the discharged female employee called him "banana hands." While Borom took offense to this statement, he dismissed and ignored the incident. He also admits that this was the only prior racial slur uttered by a coworker. Considering the remoteness of the statement, the court finds that the isolated slur was a stray utterance, and insufficient to establish a pattern of workplace discrimination.

While the responses and statements of Borom's coworkers are insufficient to establish a hostile work environment claim, Borom has raised a genuine issue of material fact as to whether the lunchroom graffiti affected a condition of his employment. Accordingly, the court will examine the actions of Borom's foremen in responding to the vandalism.

### b. *Employer Knew or Should Have Known of Harassment and Failed to Take Prompt Remedial Action*

An employer's response to discriminatory conduct will depend on the particular facts of the case, such as remedial steps taken and the severity of harassment. *Harvill*, 433 F.3d at 437. A company may avoid liability if prompt remedial action is taken once the organization is aware of improper conduct; however, such action must be reasonably calculated to end the harassment. *Id*. The Fifth Circuit has held that "a supervisor's intervention into an employee conflict shows 'immediate remedial action.'" *Cavalier v. Clearlake Rehab. Hosp., Inc.*, 306 Fed. Appx. 104 (5th Cir. 2009) (citing *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir.2002)).

Borom asserts that, by waiting until the end of the day to remove the graffiti, his foremen acted inappropriately and may be considered liable for harassment. Borom claims that he sufficiently informed two foremen of the vandalism, and as a result his supervisors knew that employees would notice the graffiti later that day. Borom also complains that management took no action to

11

investigate who was responsible for the writing. United Scaffolding maintains that the matter was promptly addressed. The defendant attaches an affidavit by a foreman who, upon viewing the graffiti, immediately instructed an employee to paint over the vandalism. United Scaffolding also asserts that proper action was taken to dismiss all employees involved in the altercation.

The court finds that United Scaffolding's foremen acted appropriately upon noticing the graffiti. The foremen reacted quickly to the situation, ordering employees back to work and avoiding an escalation of the lunchtime disturbance. United Scaffolding foremen also intervened into the conflict by firing everyone involved in the afternoon altercation and demonstrating that fighting would not be tolerated. Further, the racial graffiti was painted over in a timely manner, within five hours of Borom's initial complaint. United Scaffolding's actions in removing the graffiti and dismissing unruly employees was reasonably calculated to end further workplace tension. Accordingly, Borom's foremen cannot be considered responsible for harassment, as they attempted to restore order to the workplace.

Also, Borom's complaint that the foremen did not effectively investigate the incident lacks merit. By removing the offensive graffiti and dismissing unruly employees, Borom's foremen sent a stern message that threatening workplace behavior will not be tolerated. Further, an investigation into the matter would have likely proved fruitless, as Borom admits having no idea who was responsible for the vandalism, and also cannot recall any similar events. Borom merely presents a vague unsubstantiated assertion that his only white male coworker, who has never exhibited racist tendencies before, defaced the trailer. This claim is predicated on process of elimination and Borom's belief that a Hispanic would not commit such an act. The court finds that United Scaffolding was not required to conduct a specific inquiry as to the author of the graffiti; the foremen's actions were sufficient to discourage further misbehavior. Accordingly, because Borom

cannot demonstrate that his employer "knew or should have known of the harassment in question and failed to take action," his § 1981 claim based on hostile work environment also fails. *Celestine*, 266 F.3d at 353.

## CONCLUSION

Pending before the court is defendant United Scaffolding, Inc.'s motion for summary judgment. The court finds that plaintiff Borom has failed to demonstrate a genuine issue of material fact to defeat summary judgment on his § 1981 claims based on race discrimination and hostile work environment.

Therefore, United Scaffolding's motion for summary judgment is GRANTED.

Signed at Houston, Texas on June 29, 2009.

_____
Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY